

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

January 10, 1994

Honorable James M. Kuboviak
Brazos County Attorney
Brazos County Courthouse
Bryan, Texas 77803

Honorable Mike Driscoll
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas 77002-1891

Opinion No. DM-283

Re: Whether section 291.007 of the Local Government Code authorizes a county commissioners court to set a security fee of not more than five dollars to be taxed as court costs in each civil case filed in a probate court, as well as in a county court, county court at law, and district court and related questions (RQ-613)

Dear Gentlemen:

Each of you has asked us to clarify section 291.007 of the Local Government Code. Section 291.007 provides as follows:

> FEE FOR SECURITY. (a) The commissioners court may set a fee not to exceed $5 to be collected at the time of filing in each civil case filed in a county court, county court at law, or district court which shall be taxed as other costs. The county is not liable for the costs.
>
> (b) In any civil case brought by the state or a political subdivision of the state in a county court, county court at law, or district court in a county in which the commissioners court has adopted a fee under Subsection (a) of this section in which the state or political subdivision is the prevailing party, the amount of that fee shall be taxed and collected as a cost of court against each nonprevailing party.
>
> (c) The clerks of the respective courts shall collect the costs established by Subsections (a) and (b) of this section.
>
> (d) If a commissioners court sets a security fee under Subsection (a) of this section, the county and district clerks shall collect a fee of $1 for filing any document not subject to the security fee. The county is not liable for the costs. The county or district clerk, as appropriate, shall collect this fee.

> (e) Costs and fees collected under Subsection (c) or (d) of this section shall be paid to the county treasurer, or to any other official who discharges the duties commonly delegated to the county treasurer, for deposit in the courthouse security fund established by Article 102.017, Code of Criminal Procedure.

Acts 1993, 73d Leg., ch. 818, § 2 (adding Local Gov't Code § 291.007). Article 102.017(a), (b) of the Code of Criminal Procedure, to which section 291.007(e) of the Local Government Code refers, requires a county to collect as a cost of court a five dollar security fee from a defendant convicted in a district court for a felony offense and a three dollar security fee from a defendant convicted in a county court, county court at law, or district court for a misdemeanor offense. The county clerk is to pay these mandatory fees to the county treasurer, who must deposit them into a fund to be known as the courthouse security fund. Code Crim. Proc. art. 102.017(c) (as added by Acts 1993, 73d Leg., ch. 818, § 1); *see also* Local Gov't Code § 291.007(e) (as added by Acts 1993, 73d Leg., ch. 818, § 2). The commissioners court is to administer the courthouse security fund, which is to be used

> only to finance the following items when used for the purpose of providing security services for buildings housing a district or county court:
>
> (1) the purchase or repair of X-ray machines and conveying systems;
>
> (2) handheld metal detectors;
>
> (3) walkthrough metal detectors;
>
> (4) identification cards and systems;
>
> (5) electronic locking and surveillance equipment;
>
> (6) bailiffs, deputy sheriffs, deputy constables, or contract security personnel during times when they are providing appropriate security services;
>
> (7) signage;
>
> (8) confiscated weapon inventory and tracking systems; or
>
> (9) locks, chains, or other security hardware.

Acts 1993, 73d Leg., ch. 818, § 1 (adding Code Crim. Proc. 102.017(c), (d)).

Concerning section 291.007 of the Local Government Code, Mr. Driscoll asks five questions:

> 1. Can the Commissioners Court set a security fee of not more than $5 to be taxed as court costs in each civil case filed in a county court, county court at law, district court, and probate court in Harris County?

> 2. If the Commissioners Court sets a security fee under Subsection (a) of Section 291.007 of the Local Government Code, is the County Clerk required to collect a fee of $1 for filing each and every document not subject to the security fee?

> 3. Should the County Clerk collect the said $1 fee in lieu of other filing fees (such as fees for filing deeds, assumed name certificates, etc.) prescribed by law or in addition to such other filing fee?

> 4. Should the County Clerk charge the $1 fee for each motion or other pleading filed in the county court and county court at law after the filing of the original petition at which time the security fee not to exceed $5 was paid?

> 5. Can the Commissioners Court provide for a security fee of not more than $5 to be taxed as court costs in each civil case filed in a county court, county court at law, district court, and probate court and authorize the clerks of such courts to fix the amount of the security fee at an amount not to exceed $5 in any one case?

Mr. Kuboviak asks about the correct interpretation of "any document" in section 291.007(d), which requires a county clerk in a county in which the commissioners court has chosen to assess a security fee "to collect a fee of $1 for filing *any document* not subject to the security fee." (Emphasis added.)

The legislature enacted section 291.007 of the Local Government Code, as well as article 102.107 of the Code of Criminal Procedure, in 1993. Senate Bill 243, and its companion bill in the House, House Bill 882, were introduced in response to recent shootings in courthouses, notably in Tarrant and Dallas counties. *See* House Comm. on County Affairs, Bill Analysis, S.B. 243, 73d Leg. (1993) (hereinafter Bill Analysis); Hearings on S.B. 243 Before the Senate Comm. on Intergovernmental Relations, 73d Leg. 1 (Feb. 17, 1993) (statement of Senator Leedom, author) (transcript available from Senate Staff Services). Courthouse violence indicated a need for increased security in the courthouses to protect both courthouse personnel and members of the public who visit the

courthouses. *See* Bill Analysis, *supra*; Hearings on S.B. 243 Before the Senate Comm. on Intergovernmental Relations, 73d Leg. 1 (Feb. 17, 1993) (statement of Senator Leedom, author) (transcript available from Senate Staff Services). The legislature recognized, however, that the installation of a security system in a courthouse would add to the county budget expenses for which the county may not have provided. *See* Bill Analysis, *supra*. Consequently, legislators proposed to authorize a commissioners court to levy a "user fee" to provide revenues that partially would cover the increased securities costs. *See id.*; Hearings on S.B. 243 Before the Senate Comm. on Intergovernmental Relations, 73d Leg. 1 (Feb. 17, 1993) (statement of Senator Leedom, author) (transcript available from Senate Staff Services) (referring to fee as "user fee"); *id.* (statement of Craig Pardue, representing Dallas County) (same); Hearings on S.B. 243 Before the House Comm. on County Affairs, 73d Leg. (statement of Representative Jones, sponsor) (Apr. 21, 1993) (same); Debate on S.B. 243 on the Floor of the Senate, 73d Leg. 2 (Mar. 17, 1993) (statement of Senator Sibley) (transcript available from Senate Staff Services) (same); *id.* at 6 (statement of Senator Ratliff) (same).

As introduced, Senate Bill 243 and House Bill 882 both proposed to require a county commissioners court to set a security fee "not to exceed $5 [which] shall be collected at the time of filing in each civil case filed in a county or district court . . . , except in suits for delinquent taxes." The bill did not propose to collect a security fee from defendants in criminal cases; it did not propose to collect the security fee in civil cases brought in county courts at law; it did not propose to collect a $1 fee "for filing any document not subject to the security fee." These omissions were discussed during the bill's second reading on the floor of the Senate:

> Senator Sibley: Many, many, many more people enter those courthouses than the ones that file the [civil] lawsuits, so I think [the burden of paying for increased security costs] is being put on that group [of people filing civil lawsuits] out of proportion to . . . their use of the courthouse. . . .

> Senator Harris: Have you, in reading over this bill, have you noticed how Senator Leedom [the author of the bill] has intentionally left out tax cases from paying a part of the fee? . . . So . . . we're gonna make cases where there's a mother . . . with children, trying to get a divorce to protect the children and herself, pay this extra [five] dollars . . . but yet somebody who's out there trying to beat the school districts out of paying their school taxes, we're not gonna charge them . . . a fee for their use of the courthouse . . . .

> . . . .

> Did you notice that this bill . . . specifically exempted out criminal cases? . . . Why shouldn't the criminal help pay for this increased security if it's necessary?
>
> . . . .
>
> You think there'd be anything wrong with somebody who goes up to get their . . . marriage certificate paying a little something on a fee . . . ?
>
> Senator Sibley:   If they use the courthouse, then perhaps they ought to also.  If this is gonna be put as a user fee, . . . , then I think anybody who uses the courthouse--maybe they oughta have a turnstile where you put a quarter in when you go through the metal detector or something.

Balanced against this concern that the costs be spread to everyone who uses the courthouse was a legislative concern, which several members of the House and Senate voiced, that court costs on civil cases are so high as to prohibit low income people from bringing a civil action. *See* Hearings on H.B. 882 Before the House Comm. on County Affairs, 73d Leg. (Apr. 14, 1993) (statement of unknown representative) (tape available from House Committee Services Office) (expressing concern that costs just to file civil case "tremendous," so that some people no longer can afford to file); Hearings on S.B. 243 Before the House Comm. on County Affairs, 73d Leg. (Apr. 21, 1993) (statement of unknown representative) (tape available from House Committee Services Office) (stating that some divorce cases cost $250 just to file); Debate on S.B. 243 on the Floor of the Senate, 73d Leg. 2 (Mar. 17, 1993) (statement of Senator Sibley) (transcript available from Senate Staff Services) (stating that many people who file lawsuits cannot afford additional fee); *id.* at 3 (statement of Senator Luna) (stating that people who will have to pay fee will be poor). *But see id.* (statement of Senator Leedom) (stating that rule 145 of Texas Rules of Civil Procedure, which authorizes person who is unable to afford costs of filing original action may file affidavit to that effect, would apply to security fee proposed in S.B. 243).

During the bill's third reading on the floor of the Senate, Senator Leedom introduced a floor substitute that, he believed, dealt with the legislators' concerns, particularly those concerns that more people should be subject to the security fee.  Debate on S.B. 243 on the Floor of the Senate, 73d Leg. 1 (Apr. 15, 1993) (transcript available from Senate Staff Services).  The floor substitute proposed exacting a five dollar fee from a convicted defendant in a felony case and a three dollar fee from a convicted defendant in a misdemeanor case. *Id.*  In a further effort to spread the fee to all people coming in to the courthouse, the floor substitute proposed levying a one dollar fee on "all those that come in the courthouse [to] file papers." *Id.*

In light of this legislative history, we turn now to your specific questions. Mr. Driscoll first asks whether, in Harris County, the clerk must collect a security fee (assuming the commissioners court has assessed such a fee pursuant to section 291.007(a) of the Local Government Code) on civil cases filed in the probate court, as well as in the county court, the county court at law, and the district court. Usually, of course, a county court has the general jurisdiction of a probate court. Tex. Const. art. V, § 16; Prob. Code § 4. A district court generally has jurisdiction over executors, administrators, guardians, and wards. Tex. Const. art. V, § 8; Prob. Code § 5(a). However, the legislature has provided certain counties with either a statutory probate court, county court at law, or another statutory court exercising the jurisdiction of a probate court. *See generally* Gov't Code ch. 25, subch. C. Harris County has four statutory probate courts. Gov't Code § 25.1031; *see id.* § 25.1034 (providing for Harris County probate courts).

Whether a clerk may collect a security fee on a probate case filed in a statutory probate court or another statutory court exercising the jurisdiction of a probate court will depend on the resolution of two issues: first, whether a probate case is a "civil case" for purposes of section 291.007 of the Local Government Code; and second, whether we should interpret the list of clerks of court authorized to collect the security fee to include clerks of statutory probate courts. In regard to the first issue, we note that Craig Pardue, representing Dallas County, testified before the Senate Committee on Intergovernmental Relations, that the Dallas District Attorney's office had drafted the language of Senate Bill 243, as introduced, "to track the law library fee that the commissioners currently assess." Hearings on S.B. 243 Before the Senate Comm. on Intergovernmental Relations, 73d Leg. 2 (Feb. 17, 1993) (transcript available from Senate Staff Services). Section 323.023(a) of the Local Government Code requires a commissioners court to set a sum "not to exceed $20 [to] be taxed, collected, and paid as other costs in each civil case filed in a county or district court, except suits for delinquent taxes."

In Attorney General Opinion H-725 (1975) this office considered whether "civil cases" in former V.T.C.S. article 1702i (1925),[1] a statute worded substantially identically to section 323.023(a) of the Government Code, included probate matters. Article 1702i authorized a clerk of a county or district court to collect, as costs in each civil case, a fee not to exceed five dollars (the specific amount to be determined by the commissioners court) for the purpose of establishing county law libraries. The opinion began analyzing the question by noting that section 12(a) of the Probate Code provides that, unless otherwise specified in the Probate Code, "[t]he provisions of law regulating costs in

---

[1]Article 1702i, V.T.C.S., provided for county law libraries in counties with a population of 350,000 or fewer. Acts 1953, 53d Leg., ch. 416, at 1014. The legislature repealed article 1702i in 1977 by the enactment of a bill that also amended former article 1702h, V.T.C.S. (1925), a statute providing for law libraries in all counties. Acts 1977, 65th Leg., ch. 131, § 2, at 271 (codified in part as Local Gov't Code § 323.023(a)).

ordinary civil cases shall apply to all matters in probate." Finding nothing in the Probate Code that covered costs for county law libraries, the opinion stated that article 1701i therefore would apply to probate proceedings unless the Texas courts have held otherwise.

Quoting *Hogan v. Turland,* 428 S.W.2d 316 (Tex. 1968), the opinion defined a "civil case," as opposed to a "criminal case," as one that "'is not brought by nor in the name of the state.'" Attorney General Opinion H-725 at 2. *But see* Attorney General Opinion V-292 (1947) at 2 (defining "civil case" as suit to redress violation of contract, or to repair injury to property, person, or personal rights). Accordingly, the opinion concluded that the county law library fee is taxable as costs in all probate proceedings unless the action is brought in the name of the state. Attorney General Opinion H-725 at 2. Based on the reasoning and conclusion of Attorney General Opinion H-725, we conclude that, for purposes of section 291.007(a) of the Local Government Code, "civil case" includes a probate matter. *See also* Attorney General Opinions DM-109 (1992) at 7-8 (stating that uncontested probate proceeding is "case" within article V, section 11 of Texas Constitution) (quoting Attorney General Opinion V-79 (1947) at 3); JM-448 (1986) at 2-3 (concluding that "civil suit" as used in V.T.C.S. article 1630d, section 3(a) includes "those suits in which a probate court has jurisdiction"). *But see* Attorney General Opinion V-292 (concluding that application filed in probate court for delayed birth certificate is not "civil case" within meaning of V.T.C.S. art. 1702a-1).

Normally, therefore, any county court, county court at law, or district court with jurisdiction over a probate matter must charge a security fee on any probate case filed in the court (assuming the commissioners court in that county has imposed the security fee). In our opinion, the legislature did not intend to differentiate between a probate case filed in county court, county court at law, or district court and a probate case filed in a statutory probate court or another statutory court exercising the jurisdiction of a probate court.[2] *See* Gov't Code §§ 25.0003(e) (describing "statutory probate court" as "county court created by statute with probate jurisdiction"), 25.0026 (providing probate court with powers and duties), 25.00265 (providing for statutory probate court seal). Consequently, we interpret section 291.007 of the Local Government Code to require a clerk, in a county in which the commissioners court has assessed a security fee, to collect a security fee on all probate cases, regardless of the particular court in which the case is filed.

---

[2]In contrast, the legislature deliberately differentiated between documents filed in justice courts and documents filed in other county courts by excluding justice courts from the list of courts authorized to collect the security fee. *See* Code Crim. Proc. art. 102.107(a), (b) (as added by Acts 1993, 73d Leg., ch. 818, § 1); Debate on S.B. 243 on the Floor of the House, 73d Leg. (May 22, 1993) (statement of Representative Heflin) (tape available from House Committee Services Office) (asking House sponsor Representative Jones about fact that bill does not propose to levy security fee on defendants found guilty of misdemeanor in justice court).

Mr. Driscoll's second, third, and fourth questions, and Mr. Kuboviak's question all concern the one dollar fee that a county or district clerk must collect, if the commissioners court in the county has set a security fee, for the "filing of any document not subject to the security fee." Key to the resolution of most of these questions is the proper interpretation of the phrase "any document not subject to the security fee." From the legislative history summarized above, we know that, as originally introduced, Senate Bill 243 proposed to collect the security fee only "at the time of filing in each civil case filed in a county or district court." Thus, the fee would be collected only from persons filing civil actions and only upon the filing of the initial pleading in the action. Because of the concerns of certain legislators, however, the original bill was amended to levy the fee on a broader class of people: specifically, as Senator Leedom said during the third reading of the bill, "all those who come in the courthouse to file papers." Debate on S.B. 243 on the Floor of the Senate, 73d Leg. 1 (Apr. 15, 1993) (statement of Senator Leedom, author) (transcript available from Senate Staff Services). Balanced against this, however, is the concern of other legislators about the high cost of bringing a civil action.

In light of these concerns, we believe the legislature intended to limit the phrase "any document not subject to the security fee" to include only those documents that are *not related to a previously filed civil case (or that do not relate to a criminal action, see infra)*. We do not believe that the legislature intended, in proposing the one dollar security fee, to further raise the cost of civil lawsuits by adding a one dollar security fee to the cost of filing each individual document filed after the initial pleading in a civil case. The five dollar security fee that is due upon the filing of a civil action is a one-time fee that covers the entire action.[3] All documents that are not filed in connection with an existing civil case are subject to the one dollar security fee (unless another statute specifically exempts a particular document from a fee such as a security fee). Of course, the newly enacted article 102.017 of the Code of Criminal Procedure applies to documents filed in connection with a felony offense in a district court or a misdemeanor offense in a county court, county court at law, or district court.

We conclude, therefore, that the "fee of $1 for filing any document not subject to the security fee," Local Gov't Code § 291.007(d), applies to all documents filed pursuant to all filing statutes, except statutes like section 12.003 of the Election Code, which expressly prohibits charging fees for voter registration not expressly authorized by statute. *See also* Elec. Code § 1.002(b). Thus, as Mr. Kuboviak suggests, a county or district

---

[3]If the statute or a political subdivision of the state files a civil action in a county court, county court at law, or district court, the security fee is not due at the time of filing; rather, pursuant to section 291.007(b) of the Local Government Code, the security fee is to be taxed and collected as costs against the nonprevailing party, *i.e.*, at the conclusion of the trial.

clerk must charge the one dollar security fee on leases, wills, marriage licenses,[4] and deeds. However, Mr. Kuboviak explicitly excludes from the list of documents subject to the one dollar security fee birth certificates, death certificates, and military discharge papers..

We understand that Mr. Kuboviak bases the exemption for birth certificates and death certificates on Health and Safety Code sections 191.0045(d) and 191.032. Section 191.032(a) of the Health and Safety Code requires the state registrar to "arrange, bind, and permanently preserve birth, death, and fetal death certificates in a systematic manner." Section 191.0045(d) requires a local registrar who issues a certified copy of a death certificate to charge the same fee that the state bureau of vital statistics charges for issuing a certified copy of a death certificate pursuant to section 191.0045(a)(2). Sections 118.011(a)(4) and 118.015 of the Local Government Code require a county clerk to collect for issuing a certified copy of a birth certificate or death certificate a fee in the same amount as the state registrar of vital statistics and the local registrar of births and deaths collect pursuant to section 191.0045 of the Health and Safety Code.

Sections 191.0045 and 191.032 of the Health and Safety Code and sections 118.011(a)(4) and 118.014 of the Local Government Code pertain only to fees for making certified copies of birth certificates and death certificates. These provisions are not relevant to fees that a county clerk may charge upon the filing and recording of a birth certificate or death certificate. We find no statute expressly exempting birth and death certificates from a fee such as a security fee. Furthermore, we believe that sections 118.011(b)(2) and 118.0216 of the Local Government Code authorize a county clerk to set and collect a records management and preservation fee of no more than five dollars from a person filing a birth certificate or a death certificate. *See* Letter Opinion No. 92-77 (1992) at 2 (concurring in statement that county clerk should impose on all documents filed in county clerk's office records management and preservation fee). Likewise, in our opinion, section 291.007(d) authorizes the clerk to collect a fee of one dollar for security costs upon the filing of a birth certificate or a death certificate.

Section 192.002(b) of the Local Government Code explicitly prohibits a county clerk from charging a fee for the "recording and keeping of a military discharge record." Section 192.002 does not explicitly prohibit, however, a clerk from collecting a fee such

---

[4]We believe that Mr. Kuboviak's assertion that a clerk may collect a fee pursuant to section 291.007(d) of the Local Government Code upon the filing of a marriage license is correct and consistent with the legislature's intent. *See supra* pp. 4-5 (quoting discussion between Senators Sibley and Harris during second reading of S.B. 243 on floor of Senate). We note that sections 118.011(7) and 118.018 of the Local Government Code impose a $25.00 fee "for issuing a marriage license," which "includes every service relating to issuance of the license." The statute does not, however, expressly prohibit the collection of a fee such as that section 291.007(d) of the Local Government Code authorizes upon the filing of a marriage license.

as the fee section 291.007(d) of the Local Government Code authorizes. Accordingly, we conclude that, pursuant to section 291.007(d) of the Local Government Code, a county clerk may charge a one dollar fee upon the filing of a military discharge record.

Legislators' comments about the mounting costs of filing a civil case suggest that the legislature intended the security fee to be cumulative of other filing fees. Additionally, revenue from the security fees are earmarked for very specific expenses that counties must pay. Other statutory fees are similarly designated to pay specific county expenses. For example, pursuant to section 323.023(a) of the Local Government Code, a clerk of a county or district court must collect a fee, the amount of which the commissioners court is to set but which is not to exceed twenty dollars, as a cost of court in each civil action, except a suit for delinquent taxes. A clerk is to submit revenues from this fee to the county treasurer, who is to deposit them into the county law library fund. Local Gov't Code § 323.023(b). The county may use the county law library fund "only for the purpose of establishing the law library . . . or for the purpose of purchasing or leasing library materials, maintaining the library, or acquiring furniture, shelving, or equipment for the library." *Id.* Additionally, pursuant to sections 118.011(b)(2) and 118.052(3)(F) (as added by Acts 1993, 73d Leg., ch. 675, § 1, at 2509, 2510), a county clerk may (in the case of non-court documents) or must (in the case of documents filed in connection with civil or probate actions) charge a records management and preservation fee. Revenues from this fee are to be used "only for records management and preservation purposes in the county" or for "specific records preservation and automation projects." *See* Local Gov't Code §§ 118.0216, 118.0546(d) (as added by Acts 1993, 73d Leg., ch. 675, § 2, at 2509, 2510), 118.0645(d) (as added by Acts 1993, 73d Leg., ch. 675, § 3, at 2509, 2510). If a clerk collected the security fee in lieu of other statutory filing fees, such as the law library fee or the records management and preservation fee, then those other funds would receive no, or very little, new revenues. We do not believe the legislature intended such a result.

Thus, we believe that the five dollar security fee is cumulative of other filing fees that clerks collect as costs of court. For the same reasons, we believe that the one dollar security fee levied on a document not subject to the five dollar security fee is cumulative of any other fees that a clerk collects upon the filing of the document. Accordingly, in response to Mr. Driscoll's third question, we conclude that a county clerk must collect the one dollar fee in addition to other filing fees prescribed by law.

Finally, Mr. Driscoll asks whether a commissioners court may, without designating a specific amount, require the clerks of the various listed courts to collect a security fee of not more than five dollars, thereby delegating to the clerks of such courts the authority to determine the amount of the fee so long as the fee is not more than five dollars in any one case. We believe the commissioners court must set the exact amount of the security fee if it decides to assess such a fee. During the second reading of Senate Bill 243 on the floor

of the Senate, Senator Leedom emphasized that the bill was permissive in that the bill authorized, but did not require, a commissioners court to assess a security fee of not more than five dollars. Debate on S.B. 243 on the Floor of the Senate, 73d Leg. 5 (Mar. 17, 1993) (statement of Senator Leedom, author) (transcript available from Senate Staff Services). Senator Leedom further stated, however, that "the commissioners court [would] have to set [the security fee]."

## S U M M A R Y

Pursuant to section 291.007 of the Local Government Code, a commissioners court may set a security fee not to exceed five dollars, which the clerk must collect at the time of filing in each civil case filed in a county court, county court at law, and district court, as well as in a statutory probate court or another statutory court exercising the jurisdiction of a probate court. If the commissioners court sets such a security fee, the clerk also must collect a security fee of one dollar for filing each document that is not related to an existing civil case or criminal case (so long as no other statute specifically exempts the document from the imposition of a fee such as the fee section 291.007 of the Local Government Code authorizes a clerk to collect). Of course, article 102.017 of the Code of Criminal Procedure applies to documents filed in connection with criminal cases in a county court, county court-at-law, or district court. The security fee is cumulative of other filing fees. Finally, under section 291.007, the commissioners court may choose whether to impose a security fee, but if it chooses to do so, it must set the fee in an amount not to exceed five dollars. The commissioners court may not delegate to the clerks of court the responsibility of setting the amount of the fee.

Very truly yours,

DAN MORALES
Attorney General of Texas

p. 1494

JORGE VEGA
First Assistant Attorney General

WILL PRYOR
Special Counsel

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General